## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**DARRIS HOWARD,**
          **Petitioner,**

**v.**                                                      **Case No. 1:07cv253/MP/MD**

**EDWIN G. BUSS,[1]**
          **Respondent.**

_____

### REPORT AND RECOMMENDATION

  Before the court is a petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 19) to which petitioner replied (doc. 21).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by Mr. Howard, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Mr. Howard is not entitled to relief, and the petition is without merit and should be denied.

_____

[1]  Edwin Buss became Secretary of the Florida Department of Corrections on February 14, 2011 and is substituted as the respondent.

## BACKGROUND AND PROCEDURAL HISTORY

The petitioner, Darris Howard, was charged in the Circuit Court of Alachua County, Florida, by Information with one count of burglary and one count of driving with a suspended or revoked license (doc. 20, ex. A).[2]  Mr. Howard entered a plea of *nolo contendere* to the second count (ex. A, p. 43).  Mr. Howard was adjudicated guilty as charged on the burglary count and sentenced to fifteen years imprisonment under the prison releasee reoffender statute (ex. A, pp. 45-47).

Mr. Howard appealed the conviction and sentence (ex. R, p. 3; ex. E).  On March 30, 2006, the Florida First District Court of Appeals ("First DCA") *per curium* affirmed the sentence without written opinion.  *Howard v. State of Florida*, 925 So.2d 1032 (Fla. 1st DCA 2006) (Table) (copy at ex. H).  Mr. Howard then filed a *pro se* motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure, alleging two claims of ineffective assistance of counsel (ex. J, p. 4).  He amended his petition to include a third claim of ineffective assistance of counsel (ex. J, pp. 41-44).  On March 28, 2007, the Rule 3.850 court denied the three grounds by written decision (ex. J, p. 47 (incorporating order at p. 23)).  Mr. Howard appealed the denial (ex. J, pp. 78-80), and the First DCA *per curium* affirmed the denial on September 25, 2007.  *Howard v. State of Florida*, 965 So.2d 1144 (Fla. 1st DCA 2007) (Table) (copy at ex. M).

On November 5, 2007, Mr. Howard filed a state petition for writ of habeas corpus (ex. O).  The First DCA treated the petition as one alleging ineffective assistance of appellate counsel under Rules 9.040 and 9.141, Florida Rules of Appellate Procedure (ex. P).  On December 5, 2007, the First DCA *per curium* denied Mr. Howard's petition on the merits.  *Howard v. State of Florida*, 970 So.2d 438 (Fla. 1st DCA 2007) (Table) (copy at ex. Q).  Mr. Farmer filed the instant petition for federal habeas corpus on December 12, 2007 (doc. 1).  Respondent concedes the petition is timely (doc. 19, p. 5).

---

[2]  Hereafter all references to exhibits will be to doc. 20 unless otherwise noted.

## STANDARD OF REVIEW

**Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, § 2254 provides:**

> **(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–**
>
> **(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or**
>
> **(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.**

**28 U.S.C. § 2254(d) (2006).**

**The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  Section 2254(d)(2) must be divided into two separate inquiries:**

> **Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.**

---

**[3]  Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.**

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).   The federal habeas court "determining whether [it] should overturn the state courts' [sic] rejection of the claim at issue" should "review the highest state court decision disposing of the claim." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1237 (11ᵗʰ Cir. 2011); *see Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Following the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 1172, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when the Supreme Court's holding embodies the legal principle; dicta in opinions is not controlling.  *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11ᵗʰ Cir. 2010).  Furthermore, a federal court of appeals decision, "even a holding directly on point," cannot clearly establish federal law for § 2254 purposes. *Bowles*, 608 F.3d at 1316 (citing *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1866 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is "contrary to" clearly established Supreme Court case law, either because the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or because it "confronts a set of facts that is materially indistinguishable from a decision of [the] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438, 161 L. Ed. 2d 334 (2005); *see* § 2254(d)(1).  The state court does not need to cite to Supreme Court cases or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002).  If the state court decision is contrary to clearly

established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. § 2254(d)(1); *Williams*, 529 U.S. at 412–13, 120 S. Ct. at 1523. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record the court had before it. *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521; *see Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1400, 179 L. Ed. 2d 557 (2011) (holding new evidence introduced in federal habeas court has no bearing on § 2254(d)(1) review, rejecting dicta in *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam)); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). A state court's application of federal law is objectively unreasonable when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Brown*, 544 U.S. at 141, 125 S. Ct. at 1439. However, a state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles*, 129 S. Ct. at 1419. Notably, even a state court's incorrect application of law will not warrant federal habeas relief unless it is also objectively unreasonable. *See Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785-86, 178 L. Ed. 2d 624 (2011).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable

application" clause, the Supreme Court applies the "objectively unreasonable" test to the state court's factual determination.  *Miller-El v. Cockrell*, 537 U.S. 322, 324, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).  The petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct.  *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11ᵗʰ Cir. 2011); *see* § 2254(e)(1).

The Eleventh Circuit Court of Appeals in *Gill* clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  Mr. Gill's petition alleged he was denied his Sixth Amendment right to counsel.[4]  The Eleventh Circuit granted a limited Certificate of Appealability to determine the precise issue of the validity of "summary affirmance by a state appellate court of a trial court's decision based on potentially flawed reasoning."  *Id.* at 1286.[5]

The court acknowledged the well-settled principle that summary affirmances, such as the Florida Second District Court of Appeal's, are presumed adjudicated on the merits and warrant deference.  *Id.* at 1288 (citing *Harrington*, 131 S. Ct. at 784-85 and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11ᵗʰ Cir. 2002)).  "A judicial decision and a judicial opinion are not the same thing," and the Supreme

---

[4]  Mr. Gill twice moved the trial court in pretrial hearings to allow him to waive his Sixth Amendment right to counsel.  *Gill*, 633 F.3d at 1275-1284; *see* U.S. Const. amend. VI.  The trial court denied the first motion, finding that Mr. Gill's waiver of counsel was not knowing and intelligent.  *Gill*, 633 F.3d at 1278; *see Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, L. Ed. 2d 562 (1975) (accused must "knowingly and intelligently" waive representation).  It also denied the second motion, but it allowed Mr. Gill to act as co-counsel for himself only for determining trial strategy.  *Gill*, 633 F.3d at 1284.  He was convicted, and the Florida Second District Court of Appeals ("Second DCA") affirmed without opinion the trial court's denial of post-conviction relief.  *Id.* at 1284-85.  Mr. Gill then filed a petition in federal district court, which petition the court denied with prejudice.  *Id.* at 1284-85.

[5]  The court reviewed Gill's claims that the federal habeas court erred in two respects.  First, Gill argued the habeas court erred by "failing to review on the merits the 'legally and factually unsupported rationale' articulated by the state trial court." 633 F.3d at 1288.  Second, Gill argued the habeas court's decision was *per se* erroneous because it "relied on a finding that the state court did not make."  *Id.* Gill averred the trial court denied relief by finding that Gill's waiver was not knowing and intelligent, while the federal district court denied relief by finding that Gill "never clearly and unequivocally" waived his right to counsel.  *Id.*

Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion.  *Id.* at 1291 (citing *Harrington*, 131 S. Ct. at 784).  Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion."  *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244-45 (5th Cir. 2002) (summarizing the emerging circuit split)).  The Eleventh Circuit court concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning."  *Id* at 1291 (agreeing with the Fifth Circuit court in *Neal, supra*).  In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result."  *Id.*[6]

In light of *Gill*, the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it.  *Id.* at 1292.  A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable.  *Lockyer*, 538 U.S. at 64, 123 S. Ct. at 1168; *Gill*, 133 F.3d at 1290.

The Supreme Court recently summarized the meaning and function of habeas corpus in the federal system:

> Under §2254, a habeas court must determine what arguments or theories supported or . . . could have supported [ ] the state court's decision; and then it must ask whether it is possible fairminded jurists

---

[6]  Applying this analysis, the court rejected Gill's claim that the district court erred by relying on different grounds than the trial court because Gill's basic premise—the Second DCA's summary affirmance relied on the trial court's statements from the bench—was not dispositive.  *Id.* at 1288.

could disagree that those arguments or theories are inconsistent with the holding of a prior decision of this Court.

*Harrington,* 131 S. Ct. at 786.  Federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's conclusion."  *Id.* at 786 (internal quotations omitted).

The federal habeas court will take the final step of conducting an independent review of the merits of the petitioner's claims only if it finds that the petitioner satisfied AEDPA and § 2254(d).  *See Panetti v. Quarterman*, 551 U.S. 930, 953-54, 127 S. Ct. 2842, 2858-59, 168 L. Ed. 2d 662 (2007); *Jones v. Walker*, 496 F.3d 1216, 1228 (2007) (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).  When performing its review under § 2254(d), the federal court must resolve all claims for relief regardless of whether habeas relief is granted or denied.  *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (en banc); *see Puiatti v. McNeil*, 626 F.3d 1283, 1307 (11th Cir. 2010).  The federal court must also bear in mind that state court factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002) (AEDPA provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting petitioner has heavier burden to overcome the presumption of factual correctness).  "If this standard is difficult to meet, that is because it was meant to be."  *Harrington*, 131 S. Ct. at 786.

## OTHER CONTROLLING LEGAL PRINCIPLES

Ineffective assistance of counsel.

Petitioner contends in some of his claims for relief in this court that he was denied his constitutional right to the effective assistance of counsel.  The Constitution provides "[i]n all criminal prosecutions, the accused shall enjoy the right. . .to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

To prevail on a claim of ineffective assistance of counsel, the petitioner must prove: (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 677-678, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *see also Berghuis v. Thompkins,* __ U.S. __, 130 S. Ct. 2250, 2264-65, 176 L. Ed. 2d 1098 (2010). Reasonableness of representation does not implicate what is possible, prudent, or even appropriate, but only what is "constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler*, 218 F.3d at 1314. Courts must make "every effort. . .to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also, e.g., Chandler*, 218 F.3d at 1314 (the *Strickland* standard compels courts to "avoid second-guessing counsel's performance"). The Eleventh Circuit has summarized the standard and the burden:

> Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioner's to bear, is and is supposed to be a heavy one. And, "[w]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial . . . worked adequately." *See White v. Singletary*, 972 F.2d 1218, 1221 (11th Cir. 1992). Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see also, e.g., Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (the test is not whether counsel could have done more); *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992) (". . .the Constitution requires a good deal less than maximum performance.").

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S. Ct. at 2067; *see Marquard v. Sec'y for Dep't of Corr.*, 429 F.3d 1278, 1305 (11th Cir. 2005). Petitioner must show a reasonable probability exists that the outcome would have been different.  *Marquard*, 429 F.3d at 1305 (petitioner's burden under the prejudice prong is high); *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  In applying *Strickland*, the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . .that course should be followed.").

The *Strickland* standard exists to prevent petitioners from abusing the post-trial process by escaping rules of waiver or presenting new issues; it should be "applied with scrupulous care" to protect the integrity of the adversary process. *Harrington*, 131 S. Ct. at 788.  As it relates to habeas corpus applications, the Court emphasized:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations omitted); *Knowles*,129 S. Ct. at 1420 (2009) (*Strickland* claims evaluated under § 2254(d)(1) require "doubly deferential" judicial review).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.

Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11ᵗʰ Cir. 1999).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This [inquiry] is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Jones v. Sec'y, Dep't of Corr.*, __ F.3d __, 2011 WL 2540573 (11ᵗʰ Cir. Jun. 28, 2011) (quoting *Harrington*, 131 S. Ct. at 785 (2011))*.*  Habeas claims of ineffective assistance of counsel require "doubly deferential" judicial review under §2254(d) and *Strickland*, and petitioners only rarely prevail on this ground.  *See Rogers*, 13 F.3d at 386.

Deference to state court findings of fact

Under the AEDPA, the state court does not have to state its findings of fact explicitly.  *See Blankenship v. Hall*, 542 F.3d 1253, 1271-72 (11ᵗʰ Cir. 2008).   State court findings of fact can be implied from the opinion and the record when they are necessary to the Rule 3.850 court's rejection of a petitioner's claim.  *Id.*  These implicit findings are entitled to deference.  *Id.*  As explained in the Standard of Review, *supra*, the state court is not required to cite or be aware of the relevant Supreme Court precedent as long as its conclusion is not contradictory.  *Early*, 537 U.S. at 8, 123 S. Ct. at 365.  A summary adjudication with a brief, or total lack of, statement of reasons is still an adjudication on the merits.  *Harrington*, 131 S. Ct. at 780, 784; *see Childers v. Floyd*, 642 F.3d 953, 968 (11ᵗʰ Cir. 2011) ("an 'adjudication on the merits' is best defined as any state court decision that does not rest solely on a state procedural bar.").

Under Eleventh Circuit precedent, the habeas court will "'look through' a summary decision to the 'last reasoned decision' on the issue." *McGahee v. Alabama Dep't of Corr.*, 560 F.3d 1252, 1262 n.12 (11ᵗʰ Cir. 2009) (quoting *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1317 (11ᵗʰ Cir. 2006)); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991) (". . .the *Harris* presumption only applies after habeas court determines 'the relevant state court decision. . .fairly appear[s] to rest primarily on federal law or [is]

interwoven with [federal] law.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 740, 111 S. Ct. 2546, 2559, 115 L. Ed. 2d 640 (1991).

## PETITIONER'S GROUNDS FOR RELIEF

Mr. Howard presents this court with ten grounds for relief. Grounds One through Three allege ineffective assistance of counsel and were presented in Mr. Howard's motions for post-conviction relief (ex. J, pp. 1-8, 32-46).  Grounds Four through Ten allege ineffective assistance of appellate counsel and were presented in Mr. Howard's state petition for habeas corpus (ex. O), which the court treated as a petition under Rule 9.040 and 9.041, Florida Rules of Civil Procedure (ex. P).  On direct appeal, Mr. Howard's counsel raised one issue:  whether the trial court erred by denying Mr. Howard's motion for judgment of acquittal on the burglary charge (ex. E).

1.   <u>Ineffective assistance of trial counsel for failing to move to suppress identification evidence.</u>

Mr. Howard was identified during a traffic stop stemming from a 911 call (ex. J, p. 2).  Mr. Howard claims the officer who stopped him did not have a reasonable suspicion that Mr. Howard had committed or was about to commit a crime so as to justify an investigatory stop; therefore, the stop was an illegal search (ex. J, p. 5). His primary argument is that the officer did not have a description of the ethnicity of the suspect at the time he made the stop.  He also contends that the officer had no description of the vehicle (ex. J, p. 5).  Furthermore, the officer effected the stop in the middle of the night and the vehicle had dark tinted windows, so the officer would not have been able to identify the driver.  In fact, the officer did not realize there was a passenger in the car until he "made the stop" (ex. J, pp. 5-6).  Mr. Howard contends his counsel was ineffective for failing to move to suppress the identification evidence the officer learned from the stop (ex. J, p. 4).  He claims if trial counsel had moved to suppress based on an illegal stop, the identification evidence

would have been suppressed and "there was a reasonable probability that the result of the proceedings would have been different." (Ex. J, p. 6)

### State Court Decision

The Rule 3.850 court allowed Mr. Howard to amend his petition to include an additional claim (ex. J, p. 11). However, in the court's order denying Mr. Howard's amended petition, it stated: "As to grounds (A) and (B), this Court has previously denied Defendant's allegations and will not entertain Defendant's renewed contentions." (Ex. J, p. 48). The first denial order succinctly summarized Mr. Howard's argument:

> Specifically, Defendant alleges that police did not have probable cause to stop Defendant's vehicle because they did not have a description of a suspect in the burglary for which Defendant was subsequently convicted that provided enough information to implicated Defendant.

(Ex. J, p. 10). The Rule 3.850 court rejected this argument because the victim's identification of Mr. Howard at the scene of the traffic stop was the only evidence possibly subject to suppression (ex. J, p. 11). The Rule 3.850 court referred to the trial transcript in stating Mr. Howard's argument must fail because Mr. Howard's theory at trial was that he knew the victim, and she had given him consent to enter her home (ex. J, p. 11). Because Mr. Howard used his identification as part of his theory of defense, identity was not at issue at trial. The Rule 3.850 Court concluded Mr. Howard could not show he was prejudiced by his counsel's failure to file a losing motion (ex. J, p. 11).

### Federal Review of State Court Decision

The Rule 3.850 court cited the *Strickland* standard before analyzing Mr. Howard's claim. In denying the claim, the court focused not on whether the stop was in fact illegal, but whether a motion to suppress the evidence obtained from the stop would have had any impact on the trial. It concluded it would not (ex. J, p. 11).

When a petitioner claims his counsel was ineffective for failing to file a timely motion to suppress, the petitioner must prove to following:

> **(1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth [or Fifth] Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence.**

*Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 2582-83, 91 L. Ed. 2d 305 (1986)).  At trial, Mr. Howard's counsel argued that Mr. Howard had purchased marijuana from the victim that turned out to be "shake."  When he went to the victim's house to get his money back, the victim was angry and refused to give him the money. Out of spite, she called the police and fabricated the story about the burglary.  (Ex. C, pp. 19-20, 167-171).   The defense introduced testimony from Willie Jackson, the passenger in Mr. Howard's car the night of the burglary.  Mr. Jackson testified he saw Mr. Howard knock on the victim's door, go inside the apartment, and return several minutes later with the bag of marijuana (ex. C, pp. 139-141).  Mr. Jackson did not observe the door "get busted in."  (Ex. C, p. 139).

Mr. Howard's claim rests on the rationale that if the identification evidence had been suppressed, he would not have been charged with the crime (doc. 1, p. 4).  But Mr. Howard's theory of defense at trial did not make sense unless he conceded that he knew the victim.   Even if his counsel had succeeded in suppressing the identification evidence obtained from the stop, the victim could still independently identify Mr. Howard.  The suppression would have no impact on the outcome of the trial.  Mr. Howard cannot show "there is a reasonable probability that the verdict would have been different absent the excludable evidence."  *Zakrzewski,* 455 F.3d at 1260.

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Howard is not entitled to federal habeas relief on this claim, and the writ should not issue.

2.      **Ineffective assistance of trial counsel for failing to object to jury instruction.**

Mr. Howard contends his counsel was ineffective for failing to object to the trial judge's error in reading the jury instruction for a lesser included offense.  He asserts the instruction as read "created a mandatory presumption that shifted [the] burden to Defendant."  This error prejudiced him under *Strickland* because it caused the jury to reason that "if they were going to find the defendant guilty of the lesser included offense of trespass in a structure, that Defendant was required to proved that he was only guilty of that offense."  (Ex. J, p. 7).

The trial judge instructed the jury on the crime of trespass in a structure, a lesser included offense of burglary.  He stated:

> The punishment provided for by law for the crime of trespass in a structure is greater if the trespass is committed under certain aggravating circumstances.  Therefore, if you find the defendant guilty of trespass in a structure, you must then consider whether the defendant (sic) has further proved those circumstances.

(Ex. C, p. 181) ("(sic)" in transcript).  Mr. Howard states his counsel's failure to object to the instruction denied him a fair and impartial trial (ex. J, pp. 7-8).  Mr. Howard's habeas petition further avers the Rule 3.850 court opinion should not have considered the jury instructions as a whole because he did not raise them as erroneous in his motion for post-conviction relief (doc. 1, p. 8).  He maintains this instruction must be looked at in isolation:

> . . ..Petitioner did not allege that the court at any other time misspoke.  Rather, Petitioner alleged that because the court misspoke at that particular, crucial time, alone, Petitioner was deprived of constitutional due process.

(Doc. 1, p. 8).

State Court Decision

The Rule 3.850 court concluded Mr. Howard did not show that his counsel's failure to object to the instruction for trespass in a structure prejudiced him under *Strickland* (ex. J, p. 12).  The Rule 3.850 court looked at the trial court judge's oral

instructions as a whole.  It referenced relevant portions of the record in finding the following:

1.  Aside from the aforementioned error, at no other time did the judge "make any indication" that Mr. Howard bore the burden of proof.

2.  Immediately after the statement in question, the judge instructed the jury that Mr. Howard enjoyed the presumption of innocence.

3.  The jury instructions for the primary charge of burglary contained no errors.

4.  The jurors were given written jury instructions for deliberations.
(Ex. J, p. 12).

<u>Federal Review of State Court Decision</u>

The Rule 3.850 court applied the clearly established federal law for a claim of ineffective assistance of counsel by stating Mr. Howard did not show he was prejudiced by his counsel's inaction.  *See Strickland, supra*. The court's decision was not an unreasonable application of law to the facts.  "[T]here may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring automatic reversal of the conviction."  *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 827, 17 L. Ed. 2d 705 (1967).  Although errors resulting in the deprivation of some constitutional rights are "harmful per se," when the error is merely a "deviation from formal correctness" it may be harmless. *Vaccaro v. United States*, 461 F.2d 626, 636 (5th Cir. 1972)[7] (citing *Bollenbach v. United States*, 326 U.S. 607, 614, 66 S. Ct. 402, 406, 90 L. Ed. 350 (1946) (coerced confessions, right to counsel, right to impartial judge as examples of deprivations

---

[7]  Former Fifth Circuit decisions issued before October 1, 1981, are binding precedent on the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

that are harmful per se)).[8]   To constitute harmless constitutional error, the court must be able to conclude beyond a reasonable doubt that there is no "reasonable possibility that the evidence complained of might have contributed to the conviction."  *Chapman*, 386 U.S. at 23, 87 S. Ct. at 827; *Vaccaro*, 461 F.2d at 637-638.

The record supports the Rule 3.850 court's conclusion that counsel's failure to object did not prejudice Mr. Howard because the trial judge's error was harmless. Though the trial judge misread the jury instruction so as to shift the burden of proof to Mr. Howard, three sentences later the trial judge instructed on the presumption of innocence, and continued the instruction for five consecutive sentences (ex. C, pp. 181-182).  The trial judge's misstatement is exactly the kind of "judicial slip of the tongue" the Eleventh Circuit has held to harmless error.  *See Vaccaro*, 461 F.2d at 636 (citing *Thrash v. O'Donnell*, 448 F.2d 886, 890 (5th Cir. 1971) ("[t]here is much doubt that what was said was anything more than a juridical slip of the tongue, and second, in the charges as a whole the Court stated time and again what the jury had specifically to determine. . ..").

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Howard is not entitled to federal habeas relief on this claim, and the writ should not issue.

---

[8]   Justice Stewart states in his concurrence to *Chapman* that "[w]hen a jury is instructed in an unconstitutional presumption, the conviction must be overturned, though there was ample evidence apart from the presumption to sustain the verdict."  386 U.S. at 44, 87 S. Ct. at 838 (Stewart, J., concurring).  Since *Chapman*, the United States Supreme Court and the Eleventh Circuit have indicated that even an instruction shifting the presumption of innocence is harmless error in some circumstances.  *See, e.g., Turner v. United States*, 396 U.S. 398, 421, 90 S. Ct. 642, 24 L. Ed. 2d 610 (1970) (even if statute changing presumption is invalid, error was harmless because the evidence proved the crime); *Vaccaro*, 461 F.2d at 636 n.52 (listing cases where courts determined erroneous instruction did not contribute to guilty verdict).

3.      __Ineffective assistance of trial counsel for failing to impeach witnesses.__

Mr. Howard contends his trial counsel should have impeached the officer who conducted the stop (doc. 1, p. 10; doc. 20, ex. J, p. 42).  Specifically, Mr. Howard states the officer testified the dispatcher alerted him to a black male who may have committed a burglary (ex. J, p. 41).[9]  However, Mr. Howard states the victim told the police she did not know whether Mr. Howard was "black or white" (ex. J, p. 42).  He reasons that if his trial counsel would have questioned the officer about how he knew the suspect was a black male, the jury would have doubted whether Mr. Howard committed the burglary (ex. J, pp. 41-43).

__State Court Decision__

The Rule 3.850 court stated the same reason for denying Mr. Howard's first claim in denying this claim (ex. J, p. 49).  First, Mr. Howard failed to show that "but for counsel's failure to question Officer Giles further, the outcome of the trial would have been different."  (*Id.*).  Second, it reiterated that Mr. Howard's theory of defense was that the victim knew Mr. Howard and gave him consent to enter her home.  The court reasoned that counsel would have impugned the theory of defense "[b]y calling attention to the victim's inability to tell whether the suspect was black or white. . .."  (Ex. J, p. 49).  The court concluded:

> [Mr. Howard's] contention only creates a conceivable effect as to whether the jury would find Officer Giles' testimony believable, and does not create a reasonable probability that, but for counsel's failure to further question Officer Giles, the result of the proceeding would have been different.

---

[9] Mr. Howard's amended motion for post-conviction relief argued trial counsel should have impeached the officer's testimony to show: 1) the officer did not have reason to stop Mr. Howard's vehicle; 2) the dispatcher never gave the officer the description of the suspect about which the officer testified; 3) the officer could not have known Mr. Howard's ethnicity; 4) the officer may not have seen Mr. Howard prior to the traffic stop, so he could not have known whether Mr. Howard matched the dispatcher's description, or he effected the stop without a description of the suspect. (Ex. J, pp. 41-44).  Because Mr. Howard's habeas petition only raises the issue of ethnicity, this court deems the other issues waived.

(*Id.*).  Therefore, Mr. Howard failed to show his counsel performed deficiently or to Mr. Howard's detriment (*id.*).

### Federal Review of State Court Decision

The Rule 3.850 court denied Mr. Howard's claim for failure to meet the deficient performance prong of *Strickland*.  It cited the same portions of the transcript it used as record support in claim one, highlighting Mr. Howard's theory of consent as a defense to the burglary charge.  In particular, counsel argued in opening and closing that it was no surprise that the victim identified Mr. Howard because she already knew him, and it was no surprise that Mr. Howard's fingerprints were on the handrail to the victim's apartment because she let him inside (ex. C, pp. 19, 169-170).  Additionally, counsel elicited testimony that Mr. Howard's passenger observed someone open the victim's door and allow Mr. Howard inside (ex. C, pp. 139-141).

The Eleventh Circuit has explicitly rejected allegations like Mr. Howard's as speculation based on hindsight:

> The widespread use of the tactic of attacking trial counsel by showing what "might have been" proves that nothing is clearer than hindsight-except perhaps the rule that we will not judge trial counsel's performance through hindsight. *See, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight."); *Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir.1992) ("Most important, we must avoid second-guessing counsel's performance. As is often said, 'Nothing is so easy as to be wise after the event.' " (Citation omitted.)); *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir.1992) ("Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight."); *Thompson v. Wainwright*, 784 F.2d 1103, 1106 (11th Cir.1986) ("Hindsight, however, is not the appropriate perspective for a court to examine counsel's effectiveness."). *We reiterate: "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." Foster v. Dugger*, 823 F.2d 402, 406 (11th

Cir.1987), cert. denied, 487 U.S. 1241, 108 S. Ct. 2915, 101 L. Ed. 2d 946 (1988), quoted in *Atkins v. Singletary*, 965 F.2d at 960.

*Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (citations in original) (emphasis added).

The Rule 3.850 court concluded Mr. Howard's contentions were based on mere speculation that did not meet the *Strickland* standard to show ineffective assistance of counsel.  Its ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Howard is not entitled to federal habeas relief on this claim, and the writ should not issue.

**Grounds 4-10: Ineffective assistance of appellate counsel.**

For Mr. Howard's remaining grounds, this court reviews the state court's decision based on the clearly established federal law for showing ineffective assistance of appellate counsel.  The governing standard for ineffective assistance of appellate counsel is the same as set forth in *Strickland*, *supra*:  counsel rendered deficient performance, and the deficient performance prejudiced the petitioner. Appellate counsel does not perform deficiently for failing to raise every non-frivolous ground for appeal.  *Smith v. Robbins*, 528 U.S. 259, 288, 120 S. Ct. 746, 765, 145 L. Ed. 2d 756 (2000).  Indeed, "the practice of 'winnowing out' weaker arguments on appeal, so to focus on those grounds that are more likely to prevail, is the 'hallmark of effective appellate advocacy.'"  *Hargrove v. Solomon*, 227 Fed. Appx. 806, 808 (11th Cir. 2007) (unpublished opinion) (citing *Smith v. Murray*, 477 U.S. 537, 536, 106 S. Ct. 2661, 2667, 91 L. Ed. 2d 434 (1986)).  Furthermore, for the petitioner to be prejudiced, he must show a reasonable probability that the outcome of the appeal would have been different, not the outcome of the trial on remand.  *Clark v. Crosby*, 335 F.3d 1303, 1312 n.9 (11th Cir. 2003).  The state court did not specifically cite this standard, but it was not required to.

While ineffective assistance of appellate counsel is a question of federal law, federal habeas courts defer to the state court's decision interpreting state law to the extent that the answer turns on whether counsel should have raised a state law issue. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superceded by statute on other grounds).

4.    <u>Ineffective assistance of appellate counsel for failing to challenge improper admission of hearsay.</u>

Mr. Howard raised this claim as Ground One in his state petition for habeas corpus (ex. O, pp. 2-4). At trial, the prosecutor sought to admit as evidence the 911 tape recording of the victim reporting the burglary (ex. C, p. 31). Mr. Howard's trial counsel, Ms. Stacy, objected to introduction, arguing the recording was improper hearsay evidence (ex. C, p. 31). The prosecutor responded that the 911 operator's statements were not being introduced for their truth, and the victim's statements are not hearsay (ex. C, p. 32). Ms. Stacy argued the prosecutor failed to lay a predicate to show an exception to the hearsay rule (*id.*). The trial court sustained the objection and instructed the prosecutor that he would have to lay a foundation for the exception before introducing the tape (*id.*). The prosecutor continued questioning the victim and again moved to introduce the 911 tape (*id.*). Ms. Stacy objected a second time, but the court allowed the evidence to be introduced (ex. C, p. 33).

Mr. Howard argues the court failed to make "foundational factual findings" before admitting the evidence (ex. O, p. 2). He contends the court had to find by a preponderance of the evidence that: (1) the victim had not had time to engage in reflective thought before making the call; (2) the victim's statements were not "pre-fabricated"; and (3) the victim's testimony about her excited state was truthful. (Ex. O, pp. 2-3). He concludes that had his appellate counsel raised the issue on direct appeal, there is a reasonable probability that the state appellate court would have found that the judge's failure to make factual findings was an abuse of discretion and reversible error (ex. O, p. 3).

**State Court Decision**

The First DCA *per curiam* denied Mr. Howard's petition on the merits without written opinion (ex. Q).

**Federal Review of State Court Decision**

This court gives deference to the First DCA's adjudication of Mr. Howard's petition on the merits as long as its conclusion is not contradictory to clearly established federal law.  *See Harrington*, 131 S. Ct. at 780, 784; *Wright*, 278 F.3d at 1254-55.  This court also presumes the state court's decision is correct "to the extent it decides the validity of [the petitioner's] underlying state law claims," but separates this inquiry from the federal issue of whether the petitioner received constitutionally effective assistance.   *Alvord*, 725 F.2d at 1291 (superceded by statute on other grounds).   Florida defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fla. Stat. § 90.801.  Hearsay is generally inadmissible.  Fla. Stat. § 90.802.  However, a statement that is an excited utterance is admissible for its truth as an exception to hearsay.   An excited utterance is defined as "[a] statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  Fla. Stat. 90.803(2).

At trial, the prosecutor questioned the victim about the circumstances surrounding the 911 call:

> Q     Miss Theogene, when you made the 911 call, were you still under the impression or were you under the emotional state of this occurrence?
> A     I was really scared.
> Q     And the things that you stated on this, were they in response to this incident?  The utterances or the statements that you made, were they in response to this incident?
> A     Yes.
> Q     Were you still under the emotional state of this incident?
> A     When I made the call?

> Q       No.  Was your emotional state still affected when you made
> this 911 call?
>        A       Like me being scared?  Yeah.
>        Q       Was there a time lapse from the time you made this call to
> the time this incident happened, or was it contemporaneous with the
> incident happening?
>        A       It happened at the same time as the incident.

(Ex. C, pp. 32-33).  Ms. Stacy objected again, and the court overruled the objection
(*id*.).

The prosecutor's line of questioning established: (1) the victim called 911
under the stress of excitement caused by the burglary; and (2) only a short amout
of time elapsed between the burglary and the 911 call.   Therefore, appellate
counsel's decision not to raise this issue on direct appeal was reasonable because
it was unlikely to succeed.  *See Hargrove*, 227 Fed. Appx. at 808.  Mr. Howard has not
shown there was a reasonable probability the outcome of the direct appeal would
have been different had his appellate counsel raised this ground.

The state court's ruling did not result in a decision that was contrary to, or
involved an unreasonable application of, clearly established federal law, or was
based on an unreasonable determination of the facts in light of the evidence
presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Howard is not entitled to
federal habeas relief on this claim, and the writ should not issue.

**5.       Ineffective assistance of appellate counsel for failing to challenge the
           investigating officer's allegedly improper opinion testimony.**

Mr. Howard alleges his appellate counsel was ineffective for failing to raise the
issue of fundamental error because the trial judge did not *sua sponte* disallow the
investigating officer's testimony that burglars usually go to the bedroom (ex. O, pp.
6-7).[10]  He states the prosecution used this testimony to establish Mr. Howard's

---

[10] Mr. Howard raised this as Ground Three in his state habeas petition.  In his federal habeas petition,
he frames the issue as "fundamental error and/or ineffective assistance of counsel. . .." (Doc. 1, p. 12).
Mr. Howard did not raise an ineffective assistance of trial counsel claim in his state habeas petition

intent to commit theft, which in turn supported the burglary charge (ex. O, pp. 6). He claims the testimony "allowed" him to be convicted not upon his actions, but upon the actions of other criminals (*id.*).  Mr. Howard concludes that if his appellate counsel had raised the issue on direct appeal, his conviction would have been reversed (ex. O, pp. 7).

<u>State Court Decision</u>

The First DCA *per curiam* denied Mr. Howard's petition on the merits without written opinion (ex. Q).

<u>Federal Review of State Court Decision</u>

The state court's decision was not objectively unreasonable under *Strickland*, and this court defers to its interpretation of state law, which is inferred from the record as necessary to the state court's decision.  One element of burglary is the intent to commit a theft in the dwelling. Fla. Stat. § 810.02(1)(b) (2004); (Ex. A, p. 13). The prosecutor elicited the following testimony from the investigating officer, Sergeant Giles:

> Q      During your thirteen, thirteen and a half years of being a police officer, have you had an opportunity to investigate burglaries in the past?
> A      Yes, I have.
> Q      Approximately how many times?
> A      I would say a big part of our call load, over thousands.
> Q      During those times were you able to ascertain the locations where items were recovered from the apartments, dwellings, cars, whatever you investigated burglaries from?
> A      Yes.
> Q      Was there ever an occasion where items were removed from a bedroom?
> A      Yes.  Typically they're stolen from bedrooms because that's where most of the valuables are kept.

---

and cannot add it now as an alternative claim.  A claim that is not properly raised in state court and can no longer be litigated under state procedural rules is procedurally defaulted from federal review. *Coleman*, 501 U.S. at 734-35 and n.1, 111 S. Ct. at 2557 and n.1; *see also* 28 U.S.C. § 2254(b)(1)(A).

(Ex. C, pp. 89-90).  Ms. Stacy did not object.  The prosecutor referred to Sergeant Giles' testimony in his closing statement as further support that Mr. Howard possessed the requisite intent to commit a theft in the dwelling:

> Also you heard Sergeant Giles testify, and common sense would say that a lot of valuables are kept where in the house?  The bedroom, jewelry boxes.  Where was Mr. Howard going at the time he ran into Miss Theogene?  The bedroom.

(Ex. C, p. 162).  Because Ms. Stacy did not object to Sergeant Giles' testimony or the prosecutor's closing statement, the issue was not preserved for appeal and could only be raised if it constituted fundamental error.  *Lawrence v. State of Florida*, 831 So.2d 121, 134 (Fla. 2002).   Under Florida law, fundamental error is error that "reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error."  *Kilgore v. State of Florida*, 688 So.2d 895, 898 (Fla. 1996) (internal quotations omitted).  Failure to correct fundamental error results in a deprivation of the petitioner's constitutional due process rights.

The trial court's failure to "*sua sponte*" correct Sergeant Giles' testimony was not erroneous under Florida law.  The Florida rules of evidence provide:

> If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is only admissible if it can be applied to the evidence at trial.

Fla. Stat. § 90.702 (2004).   Sergeant Giles was a thirteen-year veteran law enforcement officer with extensive experience investigating burglaries.  Whether Mr. Howard intended to commit a theft in the victim's dwelling was a fact in issue.  Sergeant Giles' opinion was admissible because the victim testified she was in her bedroom calling 911 when Mr. Howard opened her bedroom door (ex. C, pp. 29-30).  Taken together, Sergeant Giles' opinion that burglars often go to bedrooms to take

valuables applied to the victim's testimony to prove Mr. Howard intended to commit a theft in the dwelling.[11]

The state court's summary rejection of Mr. Howard's claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.   Its decision could be reasonably based on the conclusion that Mr. Howard's appellate counsel was not ineffective under the *Strickland* standard because the issue was not preserved at trial and did not constitute fundamental error.   Mr. Howard is not entitled to federal habeas relief on this claim, and the writ should not issue.

6.   **Ineffective assistance of appellate counsel for failing to challenge the prosecutor's opening statement.**

Mr. Howard alleges his appellate counsel was ineffective for failing to raise the issue of fundamental error or ineffective assistance of trial counsel in allowing the prosecutor to submit "unsworn testimony" in his opening statement (doc. 1, p. 13; doc. 20, ex. O, p. 7).  Mr. Howard raised this as Ground Four in his state petition for habeas corpus (ex. O, p. 7).   He states that the prosecutor said in opening statements that a police officer would testify that he processed a knife for fingerprints, but the testimony was never offered (*id.*).  He contends the prosecution improperly relied on the statement to establish "intent to commit theft, and to inflame the jury."  (*Id.*).  Mr. Howard alleges his trial counsel was ineffective for failing to object to the prosecutor's statements, or alternatively, the prosecutor's "testimony" was fundamental error (ex. O, p. 8).   He concludes his appellate counsel's failure to raise this issue on direct appeal amounted to ineffective

---

[11]  The undersigned notes that even if the testimony had been inadmissible, the trial court's alleged error would still not constitute fundamental error so that a guilty verdict could not have been obtained without it.  *See Kilgore*, 688 So.2d at 898.  Therefore, appellate counsel's failure to raise the issue on appeal would not have been deficient under *Strickland*.

assistance because the appellate court would have reversed his conviction (ex. O, p. 9).

### State Court Decision

The First DCA *per curiam* denied Mr. Howard's petition on the merits without written opinion (ex. Q).

### Federal Review of State Court Decision

The state court's summary rejection of Mr. Howard's claim was not unreasonable insofar as he bases the claim on ineffective assistance of trial counsel. The Florida Supreme Court has clarified that ineffective assistance of trial counsel claims are generally not cognizable on direct appeal:

> Whereas the main question on direct appeal is whether the trial court erred, the main question in a *Strickland* claim is whether trial counsel was ineffective. Both claims may arise from the same underlying facts, but the claims themselves are distinct and-of necessity-have different remedies: A claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion, and a claim of ineffectiveness generally can be raised in a rule 3.850 motion but not on direct appeal. A defendant thus has little choice: As a rule, he or she can only raise an ineffectiveness claim via a rule 3.850 motion, even if the same underlying facts also supported, or could have supported, a claim of error on direct appeal.

*Bruno v. State of Florida*, 807 So.2d 55, 63 (Fla. 2001) (footnotes omitted). Ineffective assistance of trial counsel is only cognizable on direct appeal if the record on its face demonstrates ineffectiveness. *Wuornos v. State of Florida*, 676 So.2d 972, 974 (1996) (citing *Loren v. State of Florida*, 601 So.2d 271, 273 (Fla. 1st DCA 1992) (explaining exception to general rule that ineffectiveness must be raised by collateral appeal)).

In Mr. Howard's case, the record on its face does not demonstrate ineffectiveness, so it cannot be the underlying basis for his ineffective assistance of appellate counsel claim. The prosecutor did reference a knife in his opening statement:

> **Officer Madsen also did a few other things.  He's a fingerprint - -
> or actually, he processes crime scenes, takes photos of latent prints,
> dusts, how you see on TV, crime scene investigation, uses dust to get
> fingerprints, and he was able to lift six latent prints.  And you will hear
> from Lori Wright, the fingerprint examiner.**
>
> **. . .**
>
> **And you'll hear he also tried to process another area inside the
> house which Miss Theogene said was disturbed.  *It was a knife on the
> counter which was disturbed.*  He tried to process that scene, and he
> will tell you if he would have got a fingerprint from that scene he would
> have actually had a latent, which he did not at that point.**

**(Ex. C, p. 17) (emphasis added).  During direct examination, the prosecutor asked the
victim if anything was "disturbed" in her house after the incident.  She responded:**

> **A       Yeah, when I came back home I noticed that there's - - I
> have a set of six steak knives that are in like a wooden box that sits
> there, and there was a steak knife that was on the counter.  And when
> I came home I didn't cook anything, I didn't do anything, so I didn't put
> it there.**

**(Ex. C, p. 41).  She also testified she told the police the knife was out of place (*id.*).
On cross-examination, Miss Stacy asked the victim if, when she was confronted by
Mr. Howard in the bedroom, he had a steak knife in his hand (ex. C, p. 70).  The
victim responded that he did not (*id.*).**

**Respondent contends Mr. Madsen indirectly testified about the knife (doc. 19,
p. 18).  Mr. Madsen responded to the prosecutor's questions that he would have
processed any portion of the scene that a person may have touched, but if he did not
get a latent print from that area he would not place (the lack of) the print into
evidence (ex. C, p. 109).  He identified the six print cards he processed; none of the
cards indicated a print from a knife (ex. C, pp. 110-111).**

**Miss Stacy directly addressed the knife issue in her closing statement:**

> **Now, she mentioned something about a knife was out of place on
> the kitchen counter.  Where is it?  If they had Darris Howard's
> fingerprints on some knife, don't you think they would have brought it
> in here? They don't.  The knife is a red herring.  The knife has nothing
> to do with anything.  The only person who mentioned it was Dorothy**

Theogene, and she just threw that in to try to make it sound better.  If that knife meant anything, the prosecutor would be waving it in your face right now.  The cops didn't even take it.

(Ex. C, p. 172).

It is a stretch to conclude Mr. Madsen's testimony directly supported evidence of a knife, but that is not what the prosecutor stated in his opening statement.  He stated that the victim would testify that she identified a knife that was out of place, and that Mr. Madsen "tried to process" that area.   Furthermore, Miss Stacy specifically addressed the insignificance of the knife in an attempt to undermine any prosecutorial inference that Mr. Howard used it in the course of the crime.

The face of the record does not show Mr. Howard's trial counsel was ineffective for failing to prevent the prosecutor from "testifying" during his opening statement.  In fact, it shows the opposite. During its case in chief, the prosecutor elicited testimony from the victim to put the knife at issue.  Mr. Howard's trial counsel addressed the knife and impeached the victim's testimony.

Under Florida law, Mr. Howard could only raise ineffective assistance of trial counsel based on these facts through a post-conviction motion.  Therefore, this court defers to state court's interpretation of state law in rejecting Mr. Howard's claim that his appellate counsel should have raised the issue as ineffective assistance of trial counsel.

Mr. Howard's alternate ground for relief—that his appellate counsel should have raised the issue as fundamental error—is equally unpersuasive.   The undersigned set out the relevant Florida law defining fundamental error in Ground Five and will not restate it here.  It suffices to say Mr. Howard's allegation does not support fundamental error so that it reached down to question validity of the guilty verdict.  There was ample record evidence including the victim's and investigating officer's testimony for the jury to find Mr. Howard guilty of burglary.  Under *Strickland*, Mr. Howard did not show he was prejudiced by his appellate counsel's

failure to file a motion that was unlikely to change the outcome of his appeal.  *See Clark*, 335 F.3d at 1312 n.9.

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Howard is not entitled to federal habeas relief on this claim, and the writ should not issue.


7. <u>Ineffective assistance of appellate counsel for failing to raise the issue of the prosecutor's alleged improper impeachment of a defense witness.</u>

Mr. Howard alleges his appellate counsel was ineffective for failing to raise the issue of fundamental error or ineffective assistance of trial counsel because the prosecutor "was allowed to employ a highly improper method of impeachment of the sole defense witness, Willie Jackson."  (Doc. 1, p. 14; doc. 20, ex. O, p. 9).  This claim was Ground Five in his state petition for habeas corpus and is restated verbatim in the instant petition (ex. O, p. 9).

<u>State Court Decision</u>

The First DCA *per curiam* denied Mr. Howard's petition on the merits without written opinion (ex. Q).

<u>Federal Review of State Court Decision</u>

This court defers to the state court's interpretation of state law.  Section 90.608, Florida Statutes, provides that any party may attack the credibility of a witness by "[i]ntroducing statements of the witness which are inconsistent with the witness's present testimony."  Fla. Stat. § 90.608(1) (2004).  Before impeaching a defense witness, the state must lay the proper foundation by "[calling] to the witness's attention the time, place, and person to whom the statement was allegedly made."  *Pearce v. State of Florida*, 880 So.2d 561, 569-570 (Fla. 2004) (citing *Rowe v. State of Florida*, 174 So. 820, 821 (Fla. 1937)).  A proper foundation is laid when the aforementioned criteria are "embraced in the question."  *Rowe*, 174 So. at 397.  In

*Rowe*, the Florida Supreme Court found that the following statement laid a proper foundation for impeachment with a prior inconsistent statement:

> I am asking you Mr. Simmons, for the purpose of refreshing your memory, if you do not recall that you stated to me and Mr. Singeltary in my office last night that when the car stopped at the crossing, you know there at the corner, Mr. Rowe said to you, "There may be some trouble and if there is, and if I am alive, don't leave here because there may be two dead ones"?

*Id.*  The question was proper because the time, place, persons present, and words said were "embraced in the  question."  *Id.*

Mr. Howard contests the prosecution's impeachment of its sole witness, Mr. Jackson.   Mr. Jackson testified that after he and Mr. Howard discovered the marijuana they purchased from the victim was "shake," they drove to her apartment complex, and Mr. Howard proceeded to the victim's apartment where he knocked on the door and was let in (ex. C, pp. 139-40).   On cross examination, the prosecutor elicited the following testimony concerning the night of the burglary:

> Q       In fact, when you were pulled over by the police, you told the police at first that you all just drove into the complex.  When I say you all, I mean you and - - excuse me for the southern, that you and Mr. Howard drove into the complex to turn around and no one had gotten out of the vehicle.  Isn't that what you told Sergeant Giles that morning?
> A       Yeah.
> Q       But then you turn around and change your story after he asked you one more time, and you said Yeah, Mr. Howard got out, we stopped and he got out?
> A       Yeah.
> Q       So you told him two different stories that night?
> A       Yeah.

(Ex. C, pp. 143-44).  Clearly, the prosecutor offered the prior inconsistent statement to attack Mr. Jackson's credibility.  But contrary to Mr. Howard's contention, the

prosecutor did lay the proper foundation for impeachment.   As in *Rowe*, the prosecutor's question embraced the time, place, persons present, and words said.[12]

Mr. Howard cannot show his appellate counsel was ineffective under *Strickland* for failing to raise this claim based upon either the theory of fundamental error or ineffective assistance of trial counsel.   The prosecutor's impeachment was proper under Florida law, so Mr. Howard cannot show he was prejudiced by his appellate counsel's failure to raise a meritless issue.   *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting *Alvord*, 725 F.2d at 1291), *cert. denied*, 531 U.S. 1131, 121 S. Ct. 892, 148 L. Ed. 2d 799 (2001).

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Howard is not entitled to federal habeas relief on this claim, and the writ should not issue.

8.     Ineffective assistance of appellate counsel for failing to raise as fundamental
        error the prosecutor's improper statements in closing statemnent.

Mr. Howard alleges his appellate counsel was ineffective for failing to raise as fundamental error that the trial judge did not stop the prosecutor from "improperly appeal[ing] to the societal-class biases and prejudices of the jurors" by comparing the victim's societal status with Mr. Howard's (doc. 1, p. 15; doc. 20, ex. O, p. 4). This claim was Ground Two in Mr. Howard's state petition for habeas corpus (ex. O, p. 4).  Mr. Howard argues the prosecutor should not have been allowed to state in closing statements that the jury should find the victim more credible than Mr. Jackson just because she was a college student and Mr. Jackson was "a black male

---

[12]   The time was the morning of July 3, 2004, when the police pulled over Mr. Howard's vehicle.  The place was the location of the traffic stop.  The persons present were Mr. Jackson, Mr. Howard (necessarily present because he was driving), and the police.  The "words said" were that Mr. Howard first told Sergeant Giles they had not gotten out of the vehicle at the victim's apartment complex, but he later told Sergeant Giles they stopped and Mr. Howard exited the vehicle at the apartment.

who goes to bars and hangs out." (Ex. O, p. 4). He alleges the prosecutor's statements improperly bolstered the victim's credibility. He concludes that had his appellate counsel raised the issue, the court "would have concluded that the trial judge's failure to *sua sponte* undertake curative measures" was fundamental error. (*Id.*)[13]

<u>State Court Decision</u>

The First DCA *per curiam* denied Mr. Howard's petition on the merits without written opinion (ex. Q).

<u>Federal Review of State Court Decision</u>

The First DCA's summary denial of this ground for relief was a reasonable application of *Strickland* because Mr. Howard cannot show his counsel was constitutionally deficient for failing to raise Mr. Howard's argument. The prosecutor's comments were not improper. The trial judge had no reason to issue curative instructions. Therefore, there Mr. Howard was not denied his constitutional right to a fair trial and there was no fundamental error. The issue was not appropriate for appeal, and appellate counsel is not deficient for failing to raise a meritless argument. *Nyhuis*, 211 F.3d at 1344.

It is well-settled Florida law that "wide latitude is permitted in arguing to a jury." *Breedlove v. State of Florida*, 413 So.2d 1, 8 (Fla. 1982) (prosecutor's allegations of other criminal acts, referring to killing as "savage and brutal and vicious and animal attack," and appealing to violence in the community, may have been improper but did not warrant a new trial). Closing statements serve to review the evidence, and logical inferences may be drawn. *Mann v. State of Florida*, 603 So.2d 1141, 1143 (Fla. 1992) (prosecutor's belittling of defense psychologist's

---

[13] Mr. Howard's reply shifts the blame to trial counsel: "Trial Counsel's unprofessional errors in failing to object to the fundamental error. . .is clear on the face of the record." This is not the argument advanced in his state petition for habeas corpus or the instant federal petition. Mr. Howard cannot "cover his bases" in his reply by alleging trial court error and/or trial counsel error when his state habeas petition relied on fundamental error. Because Mr. Howard at least included his state habeas arguments in his federal petition, the undersigned views his federal grounds as properly raised in state court and disregards the newly added arguments.

testimony that child molester's actions are more excusable than non-child molester's did not advance a non-statutory aggravator or denigrate mitigators); *Breedlove*, 413 So.2d at 8.  The trial court has discretion to control comments, and the appellate court will not disturb the ruling unless the appellant shows an abuse of discretion.  *Breedlove*, 413 So.2d at 8 (citing *Thomas v. State of Florida*, 326 So.2d 413, 415 (Fla. 1975) (court would not consider statements to which appellant failed to object, and statement that "I suggest to you it's too bad there's not a crime in the book called inhumanity to fellow human beings" was not so harmful as to warrant mistrial)).  The judge and jury ultimately decide the weight to be assigned to evidence and testimony.  *Mann*, 603 So.2d at 1143.  "[S]o long as they remain within the limits of the record," prosecutorial comments should not be "condemned." *Thomas*, 326 So.2d at 415 (quoting *Spencer v. State of Florida*, 133 So.2d 729, 731 (Fla. 1961) (prosecutor's statement regarding matters not in evidence did not amount to denial of fair trial)).  Even inflammatory comments are not so improper so as to warrant a new trial unless "they might have influenced the jury to reach a more severe verdict than it would have otherwise."  *Spencer v. State of Florida*, 645 So.2d 377, 383 (Fla. 1994) (prosecutor's statement that the victim came to the door with a rifle because she was afraid of the defendant, a matter not in evidence, was not so improper as to warrant a new trial)).

In Mr. Howard's case, the prosecutor stated:

> Whose credibility here do you believe?  Who is the most reliable witness?  Miss Theogene, a person who's going to school for dentistry, or Mr. Jackson?

(Ex. C, p. 165).  Contrary to Mr. Howard's assertion, the prosecutor did not say anything about "a black male who goes to bars and hangs out."  The prosecutor argued a matter that was in evidence:  the fact that Miss Theogene was taking classes for dentistry.  His statement asked the jury to infer from the evidence that Miss Theogene was more credible.  In fact, the prosecutor's rebuttal argued extensively that the prosecution witnesses were more credible than the defense

witness, and the State's version of events was more legitimate than the defense's version (*see* ex. O, pp. 174-77).[14]  Even if the comment was improper—a conclusion that does not comport with Florida case law— it was not so improper that the trial court committed fundamental error by failing to take curative measures.  Therefore, Mr. Howard cannot show he was prejudiced by his appellate counsel's failure to raise the issue on appeal because there was no reasonable probability that it would change the outcome of the appeal.  *See Clark, supra*.

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Howard is not entitled to federal habeas relief on this claim, and the writ should not issue.

9.    Ineffective assistance of appellate counsel for failing to raise as fundamental error or ineffective assistance of trial counsel the prosecutor's improper statements in closing statements.

Mr. Howard alleges his appellate counsel was ineffective for failing to raise as fundamental error or ineffective assistance of trial counsel on the face of the record that the prosecutor denigrated the defense counsel (doc. 1, p.16; doc. 20, ex. O, pp. 10-11).  This claim was Ground Six in Mr. Howard's state petition for habeas corpus (ex. O, p. 10).  Mr. Howard argues the prosecutor's statement in closing that Miss Stacy was engaging in theatrics was "highly improper."  (Ex. O, p. 11).  He contends the error is fundamental or his trial counsel was ineffective on the face of the record

---

[14]  The prosecutor stated in closing:

> This boils down to who do you believe.  Who is the most credible person that testified, who was the person that answered every question that Miss Stacy asked her, whether they were good for the case or bad for the case?. . .Who are you going to believe? Her and everybody else who testified or Mr. Jackson?

(Ex. O, pp. 176-77).

because the "case essentially amounted to a swearing contest" hinging on credibility (ex. O, p. 11).   Therefore, he avers his conviction would have been reversed if appellate counsel had raised the issue on appeal (*id.*).

### State Court Decision

The First DCA *per curiam* denied Mr. Howard's petition on the merits without written opinion (ex. Q).

### Federal Review of State Court Decision

This ground for relief raises the same legal issues as Ground Eight and is equally without merit.  Mr. Howard's reference to "theatrics" infers that his claim is based on the following portion of the prosecutor's closing statement:

> Miss Stacy kind of put it straight up.  A cat burglar.  That's what Darris Howard was that night, a cat burglar, dressed in black in the middle of the night.   She gets up here and makes a big scene, *a theatrical thing about oh, yeah, he knocked on the door*.  Why did he knock on the door?  To see if anyone was home, to see if anyone was home at three in the morning.  No one answered the door.  No one's home.

(Ex. O, p. 174) (emphasis added).  A prosecutor may make a statement to the jury about the defense when it is an "invited response."  *Rodriguez v. State of Florida*, 753 So.2d 29, 39 (Fla. 2000).  This is a narrow exception that applies when the defense has suggested an alternate explanation for events or an impropriety.  *Id.* Under those circumstances, the defense has invited a response, and the prosecutor's reasonable response is not improper.  *See Dufour v. State of Florida*, 495 So.2d 154, 160 (Fla. 1986) (when defense proffered alternate theory at closing, prosecutor's comment that the jury had not heard any such evidence was proper rebuttal); *Barwick v. State of Florida*, 660 So.2d 685, 694 (Fla. 1995) (statement asking "what fact, what testimony, what anything have you heard. . .would create a reasonable doubt in your mind" was proper comment directing jury to consider the evidence); *see also Rodriguez*, 753 So.2d at 39 (distinguishing facts in *Barwick and*

*Dufour* from the court's facts because the comments suggested the defendant had the burden of proving his innocence).

The theme of Miss Stacy's closing statement was that the prosecutor's argument "ma[de] no sense." (*See, e.g.*, ex. O, pp. 167 "It makes no sense at all."; 168 "It makes no sense."; 169 "Does this story make sense?"; 170 "None of it makes any sense."). In particular, she stated:

> The prosecution wants to cover up the fact that their star witness's story makes no sense by waving around these photos, oh look, damage, damage, damage. Did they bring you any evidence from anybody when that damage occurred, an expert? Nothing, no evidence. I submit to you it was already there, and I don't have to prove how it got there or when it got there. I just know that the state's own version of events makes absolutely no sense, especially when you look at the timetable.

(Ex. O, p. 169). Miss Stacy's closing invited a response, and the prosecution responded.[15]

The state court's summary denial of this ground for relief was a reasonable application of *Strickland* because Mr. Howard cannot show he was prejudiced by appellate counsel's failure to raise an issue that would not change the outcome of the appeal. *See Clark*, *supra.* The ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2); *Williams, supra.* Mr. Howard is not entitled to federal habeas relief on this claim, and the writ should not issue.

10.    **Ineffective assistance of appellate counsel for failing to raise as fundamental error or ineffective assistance of trial counsel the prosecutor's improper statements in opening statememt.**

Mr. Howard alleges his appellate counsel was ineffective for failing to raise as fundamental error or ineffective assistance of trial counsel on the face of the record

---

[15]  This is not to suggest Miss Stacy's trial strategy in closing was improper. It was not.

that the prosecutor implied that Mr. Howard needed to take the stand to prove his innocence (doc. 1, p.16; doc. 20, ex. O, pp. 11-12).  This claim was Ground Seven in Mr. Howard's state petition for habeas corpus (ex. O, p. 11).  Mr .Howard states: "The prosecutor was allowed to argue to the jury in opening arguments that only the Defendant could say what his intent was."  (Ex. O, pp. 11-12).  He contends this was "highly improper" because it was a comment on his silence (ex. O, p. 11).  He concludes the trial court's failure to correct the prosecutor was fundamental error, or alternatively, his trial counsel was constitutionally ineffective on the face of the record (ex. O, p. 12).  Therefore, appellate counsel's failure to raise this issue on appeal constituted ineffective assistance because if it had been raised, Mr. Howard's conviction would have been reversed (ex. O, p. 12).

### State Court Decision

The First DCA *per curiam* denied Mr. Howard's petition on the merits without written opinion (ex. Q).

### Federal Review of State Court Decision

While the *Strickland* standard is the clearly established federal law governing ineffective assistance of appellate counsel, the state court's decision must not be contrary to the clearly established federal law that applies to the arguments underlying the ineffective assistance of appellate counsel claim.  Here, Mr. Howard claims the prosecutor improperly commented on his right to remain silent.  The Supreme Court has held:

> [T]he Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.

*Griffin v. California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233, 14 L. Ed. 2d 106 (1965). A prosecutor's statement violates the defendant's constitutional right to remain silent if: (1) "the statement was manifestly intended to be a comment on the defendant's failure to testify"; or (2) "the statement was of such a character that a

jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Issacs v. Head*, 300 F.3d 1232, 1270 (11th Cir. 2002) (quoting *United States v. Knowles*, 66 F.3d 1146 (11th Cir. 1995).  The defendant bears the burden of proving the statement violated the *Griffin* standard.  *Id.*  Furthermore, the court will "look to the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact on the jury."  *Soloman v. Kemp*, 735 F.2d 395, 401 (11th Cir. 1984) (quoting *United States v. Dearden*, 546 F.2d 622, 625 (5th Cir. 1977)).

In *Solomon*, *supra*, Van Solomon appealed his conviction and sentence for murder.  735 F.2d at 398-99.  He was one of two defendants charged for the crime, and the evidence at trial included two guns from the crime scene that had both been fired.  *Id.* at 401.  The evidence did not show which defendant shot the victim.  *Id.* The prosecutor stated in closing: "We don't know which defendant had the gun.  The only person who can tell us that is Van Solomon."  *Id.*  The Eleventh Circuit held that the prosecutor's statement "was not manifestly intended to be, nor would a jury rationally and necessarily construe it as such, a comment on silence."  Instead, the court found that although the statement was an indirect reference, "taken in context" it was an evaluation of the evidence, which is permissible under *Griffin*.

Similar to *Kemp*, the prosecutor's comments about Mr. Howard's intent to commit a theft in the dwelling did not violate his constitutional right to remain silent. In opening statements, the prosecutor stated:

> It's important that you sit here and listen to the evidence today, and the only verdict that is consistent with the evidence in this case and the law is that Mr. Howard is guilty of breaking into her apartment. And you'll hear evidence, circumstantial evidence, of his intent.  *Only he knows clearly what his intent was.*
>
> But the jury instructions as given by Judge Curtin will talk about stealth entry, circumstances you can look at and I ask you to think about when you hear the evidence; knocking at the door several times to see if anyone is home, dark clothing, how he takes off his shirt when the cops confront him, how his fingerprints are found outside the door,

how he's identified.   The only verdict consistent with the law and evidence is that he's guilty of these crimes.  Thank you.

**(Ex. C, pp. 18-19) (emphasis added).  The comment was an indirect reference to Mr. Howard's silence, but taken in context with the rest of the prosecutor's statement, it was an attempt to explain that circumstantial evidence can prove guilt beyond a reasonable doubt.  The state court's denial of Mr. Howard's claim does not run afoul of the *Griffin* standard.  Accordingly, Mr. Howard failed also to meet the *Strickland* test, because he was not prejudiced by appellate counsel's failure to raise the issue on appeal.  The prosecutor's comments were not improper, so there no basis for his appellate counsel to claim fundamental error or ineffective assistance of trial counsel.**

**The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2); *Williams, supra*.  Mr. Howard is not entitled to federal habeas relief on this claim, and the writ should not issue.**

## CONCLUSION

**The court has carefully reviewed the trial transcript, the records of proceedings on Mr. Howard's motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of  Criminal Procedure, state petition alleging ineffective assistance of appellate counsel, pursuant to Rules 9.040 and 9.141, Florida Rules of Appellate Procedure, and all submissions in this proceeding.  Mr. Howard's Grounds One through Ten are without merit, and Mr. Howard is not entitled to federal habeas relief.**

## CERTIFICATE OF APPEALABILITY

**Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of**

appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(a), Rules Governing Section 2254 Cases. A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is recommended that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.      That the 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Darris Howard* in the Circuit Court of Alachua County, Florida, case no. 04-2747, be DENIED and the clerk be directed to close the file.

2.      That a certificate of appealability be DENIED.

At Pensacola, Florida, this 12th day of August, 2011.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties</u>.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**